IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


PAUL J. BEGNOCHE, SR.,            :
                                 :
          Plaintiff              :
                                 :
     v.                          :   CIVIL NO. 3:CV-12-1057
                                 :
WARDEN DEROSE, ET AL.,           :   (Judge Conaboy)
                                 :
          Defendants             :

_____

## MEMORANDUM
### Background

     This <u>pro</u> <u>se</u> civil rights action pursuant to 42 U.S.C. § 1983
was filed by Paul J. Begnoche, Sr., an inmate presently confined at
the State Correctional Institution, Mercer, Pennsylvania.  By Order
dated February 28, 2013, Plaintiff's request to file an amended
complaint was granted.  On December 12, 2013, this Court issued an
Order which construed Plaintiff's filings (Docs. 38 & 39) as being
his Amended Complaint.  <u>See</u> Doc. 68.

     Plaintiff seeks relief with respect to events which
purportedly transpired during his prior confinement at the Dauphin
County Prison, Harrisburg, Pennsylvania.  Begnoche describes
himself as being a Native American who is a follower of the Native
American Spiritual Red Path.  The Original Complaint alleged that
prison officials prevented Plaintiff from exercising his Native
American religious beliefs, including celebrating the Green Corn
Feast.  Specifically, Plaintiff claimed that were was no available
Native American spiritual advisor or spiritual needs (such as

1

prayer feathers) and that he was denied a special religious food tray during the Green Corn Feast.

Begnoche also asserts that as the result of a conspiracy between prison officials, protective custody prisoners of non-Christian faiths were provided with disparate treatment and that he was subjected to multiple cell transfers in a short period of time because of his religious beliefs. The Original Complaint additionally raised claims that prison staff tampered with his legal correspondence and the prison grievance system was inadequate. The Original Complaint sought compensatory and punitive damages as well as injunctive relief.

Named as Defendants in the Amended Complaint are the following Dauphin County Prison officials: Solicitor William Tully; Warden Dominick DeRose, Deputy Wardens Elizabeth Nichols and Carroll; Chaplain Fields; Coordinator John Adison; Case Worker Lucas; as well as Prison Board members Jeffrey Haste, Michael Pries, and Frank Lavery.[1] Plaintiff is also proceeding against four (4) John/Jane Doe Defendants.

The Amended Complaint reasserts Begnoche's earlier claims of denial of his right to exercise his religious beliefs and of his right of access to the courts.[2] However, Plaintiff also includes multiple proposed supplemental allegations that he was subjected to

---

1. Although mentioned in the body of the Amended Complaint, Original Defendant Tim Czerda is not included in the Amended Complaint's "list of all defendants" as such Plaintiff's claims against Czerda will be deemed withdrawn. See Doc. 38, pp. 3-4.

2. The Amended Complaint clarifies that after a period of four (4) months, the prison did provide a contracted volunteer Native American spiritual advisor.

unconstitutional conditions of confinement at both the Dauphin County Prison and the State Correctional Institution, Camp Hill, Pennsylvania (SCI-Camp Hill).  The Amended Complaint seeks compensatory, general, and punitive damages.

Defendants have filed a motion to dismiss the Amended Complaint for failure to state a claim upon which relief may be granted.  See Doc. 41.  Begnoche has opposed the motion to dismiss.[3]

### Discussion

**Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).

A plaintiff must present facts that, if true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This requirement "calls for enough facts to raise a reasonable expectation that

---

3.  Plaintiff has also filed a motion seeking entry of default. See Doc. 71.  Since Defendants have responded to the Amended Complaint by filing a motion to dismiss, the request for entry of default will be denied.

discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action.  Id. at 556.  A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, ___ U.S. ____ , 129 S.Ct 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Iqbal, 129 S.Ct at 1949.  Legal conclusions must be supported by factual allegations and the complaint must state a plausible claim for relief.  See id. at 1950.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, at 555.  The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  Id. at 562; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action). Furthermore, pro se litigants are to be afforded liberal treatment.  Haines v. Kerner, 404 U.S. 519, 520 (1972).

**Supplemental Claims**

Included in Plaintiff's Amended Complaint is an informal request for leave to pursue supplemental claims.  See Doc. 38, p.

4

1.  The proposed Amended Complaint also sets forth multiple proposed supplemental claims.

Defendants' motion to dismiss asserts that the proposed supplemental claims should be dismissed since this Court's February 28, 2013 Order specifically directed Plaintiff that his Amended Complaint should be limited to those claims set forth in the original Complaint.  <u>See</u> Doc. 43, p. 11.

Federal Rule of Civil Procedure 15(d) provides:

> **(d) Supplemental Pleadings.**  On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented....

Supplemental complaints are not barred merely because they set forth new claims.  However, "when the matters alleged in a supplemental pleading have no relation to the claim originally set forth and joinder will not promote judicial economy or the speedy disposition of the dispute between the parties, refusal to allow the supplemental pleading is entirely justified."  Wright & Miller, <u>Federal Practice & Procedure: Civil</u> § 1506 at 551 (1971).  A supplemental pleading cannot be used for the purpose of trying a new matter or a new cause of action.

Further, a motion for leave to file a supplemental complaint is within the sound discretion of the trial court.  Factors to be considered by the court in making this determination include the promotion of a justiciable disposition of the case, the delay or inconvenience to permitting a plaintiff to supplement the complaint, and any resulting prejudice to the other parties in the

action.  Nottingham v. Peoria, 709 F. Supp. 542, 544 (M.D. Pa. 1988).  It has been held that a court may deny leave to file supplemental claims where the new proposed pleading related only indirectly to the original complaint and the new alleged cause of action arose from a body of facts unrelated to those set forth in the original complaint.  Id.

As previously discussed, the proposed supplemental claims assert that Begnoche was subjected to unconstitutional conditions of confinement at both the Dauphin County Prison and SCI-Camp Hill. There were no claims of that type asserted in the Original Complaint.  Plaintiff also offers no explanation as to why these claims were not included in his Original Complaint.  It is also noted that this Court's February 28, 2013 Order specifically directed Plaintiff to file an amended complaint "solely regarding the allegations set forth in the Original Complaint." Doc. 35, p. 3.  The purpose of that Order was to have Plaintiff set forth his previously raised claims in an adequate manner, not to allow him to pursue numerous unrelated claims.

To permit Plaintiff to pursue multiple supplemental claims at this advanced juncture in the proceedings containing new facts and allegations not directly related to the claims set forth in the Amended Complaint would be prejudicial and conceivably cause undue delay.  Accordingly, based on an application of the factors announced in Nottingham, Plaintiff's informal request to file supplemental claims will be denied and his incorporated proposed supplemental claims will not be accepted.

6

**Personal Involvement**

Defendants assert that the claims against them are subject to dismissal because there are no allegations of personal involvement in constitutional misconduct asserted against any of those officials.  See Doc. 43, p. 26.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements:  (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Furthermore, federal civil rights claims brought under § 1983 cannot be premised on a theory of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).  As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

7

Inmates also do not have a constitutional right to a prison grievance system.  See Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 137-138 (1977); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.").  Consequently, any attempt by Plaintiff to establish liability against a defendant solely based upon the substance or lack of response to his institutional grievances does not by itself support a constitutional due process claim.  See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

The Defendants named in this matter include Prison Board members Haste, Pries, and Lavery as well as their Solicitor William Tully.  There are no discernible claims in the Amended Complaint that any of these individuals were involved in the day to day operations at the prisons.  Furthermore, it is apparent that Begnoche is attempting to establish liability against those persons based upon either their respective supervisory capacities as Prison Board members or their review of his institutional grievances while serving on the Prison Board.  Pursuant to the above discussion, either approach is insufficient for establishing civil rights

liability against those Defendants.  Accordingly, dismissal will be granted in favor of Defendants Haste, Pries, Lavery, and Tully.

With exception of the proposed previously rejected supplemental claim that the Warden arranged for an improper temporary transfer of the Plaintiff to SCI-camp Hill, the allegations properly raised before this Court against Warden DeRose and Deputy Warden Carroll are likewise premised either upon their respective supervisory capacities or their review of Plaintiff's grievances.[4]  <u>See</u> Doc. 38, p. 20.  Dismissal will also be granted in favor of Defendants DeRose and Carroll.

Also named as Defendant is Coordinator John Adison. Plaintiff contends that Adison personally reviews and prepares responses to all prisoner grievances and requests.  <u>See</u> Doc. 38, p. 10.  It is also alleged that Adison supervises the prison counselors and advises the Warden.  However, in addition to those deficient assertions of personal involvement, Plaintiff also contends that Coordinator Adison, Chaplain Fields, and Deputy Warden Nichols were responsible for his failure to receive a special food tray during the Green Corn feast.  Accordingly, the Court will deem the personal involvement requirement satisfied, at this juncture in the proceedings, with regards to those three Defendants.

Begnoche is also proceeding against Case Worker Lucas. Since it is alleged that Lucas violated Begnoche's right of access to the courts by denying him free photocopying, the personal

---

4.  A review of the Amended Complaint reveals no specific assertions lodged against Defendant Carroll.

involvement requirement will be deemed satisfied.  See id. at p. 23.

**Access to the Courts**

Plaintiff's Amended Complaint reasserts his general claims that officials at the Dauphin County Prison tampered with his legal correspondence and did not provide him with adequate access to the prison law library.  However, it also includes additional assertions of denial of access to the courts.  The motion to dismiss argues that a viable access to the courts claim has not been stated because there is no demonstration by Begnoche that he suffered any actual harm.  See Doc. 43, p. 29.

Prisoners enjoy a constitutional right of meaningful access to the law libraries, legal materials, or legal services.  Bounds v. Smith, 430 U.S. 817, 821-25 (1977).  Inmates have a right to send and receive legal mail which is uncontroverted and implicates both First and Sixth Amendment concerns, through the right to petition the government and the right of access to the courts.  "When legal mail is read by prison employees, the risk is of a 'chill,' rendering the prisoner unwilling or unable to raise substantial legal issues critical of the prison or prison employees."  Proudfoot v. Williams, 803 F. Supp. 1048, 1052 (E.D. Pa. 1992).

The United States Supreme Court in Lewis v. Casey, 518 U.S. 343, 351-54 (1996), clarified that an inmate plaintiff, in order to set forth a viable claim under Bounds, must demonstrate that a non-frivolous legal claim had been frustrated or was being impeded.  A plaintiff must also allege an actual injury to his litigation

10

efforts.  Under the standards mandated by <u>Lewis</u>, in order for an inmate to state a claim for interference with his legal work, he must demonstrate that he has suffered actual injury.  <u>See</u> <u>Oliver v. Fauver</u>, 118 F.3d 175, 177-78 (3d Cir. 1997)(concluding that <u>Lewis</u> effectively requires a showing of actual injury where interference with legal mail is alleged).

Following a careful review of the Amended Complaint, it is clear to this Court that Begnoche has failed to adequately demonstrate that he suffered any injury to a non-frivolous legal claim as required under <u>Lewis</u>.  Plaintiff acknowledges that in addition to this action he also initiated a writ of mandamus in the Dauphin County Court of Common Pleas.  However, there is no assertion that the alleged interference by prison officials cause him to suffer any adverse determination with respect to either his federal or state proceedings.[5]

Plaintiff's Amended Complaint also contends that due to a temporary transfer to SCI-Camp Hill for eight (8) days, which was purportedly arranged by Warden DeRose, he was unable to file a motion to withdraw a guilty plea or a motion seeking a sentence modification and had to purse those issues via a post conviction relief motion.  However, this speculative supplemental claim will not be considered.[6]  Plaintiff has properly alleged that he was

---

5.  Begnoche asserts that his state mandamus action was dismissed without prejudice for lack of jurisdiction because he was no longer confined in Dauphin County.

6.  Moreover, there is no viable assertion that the Dauphin County officials named as Defendants in this matter had any personal involvement with respect to any purported interference which
                                                              (continued...)

denied adequate access to the Dauphin County Prison law library and that while at that facility there was alleged interference with his legal correspondence.

Since there is no indication that Begnoche suffered any actual injury with respect to the allegations of denial of access to the courts which are pending before this Court, under the standards announced in <u>Lewis</u>, the motion to dismiss Plaintiff's claim of denial of access to the courts will be granted.  Begnoche is free to pursue any claim of denial of access to the courts stemming from his SCI-Camp Hill confinement in a separate action.

Finally, with respect to the claim that Case Worker Lucas refused to provide Plaintiff with photocopying of any grievance and civil court related materials (Doc. 38, p. 23), it is well settled that prisoners have no right to free photocopying for use in lawsuits.  <u>Johnson v. Moore</u>, 948 F. 2d 517, 521 (9th Cir. 1991)("denial of free photocopying does not amount to a denial of access to the courts"); <u>Harrell v. Keohane</u>, 621 F. 2d 1059  (10th Cir.  1980); <u>Jenkins v. Porfiro</u>, Civil Action No. 3:CV-95-2048, slip op. at 1  (M.D. Pa.  May 15, 1996) (Caputo, J.).

It has also been held that there is no requirement that the government or a defendant has to pay for an indigent plaintiff's litigation efforts.  <u>Smith v. Yarrow</u>, 78 Fed. Appx. 529, 544 (6th Cir.  2003).  Furthermore, there has been no demonstration by Plaintiff that he suffered any actual injury to as non-frivolous legal claim as a consequence of the purported denial of

---

6.  (...continued)
transpired at SCI-Camp Hill.

photocopying as mandated under <u>Lewis</u>.  Dismissal will be entered in favor of Defendant Lucas.

**<u>Conspiracy</u>**

Defendants maintain that the Amended Complaint does not set forth a viable conspiracy claim.  <u>See</u> Doc. 43, p. 32.

In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations.  <u>D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.</u>, 972 F.2d 1364, 1377 (3d Cir. 1992), <u>cert. denied</u>, 506 U.S. 1079 (1993); <u>Rose v. Bartle</u>, 871 F.2d 331, 366 (3d Cir. 1989); <u>Durre v. Dempsey</u>, 869 F.2d 543, 545 (10th Cir. 1989).  The Third Circuit Court of Appeals has further noted that "[a] conspiracy claim must . . . contain supportive factual allegations."  <u>Rose</u>, 871 F.2d at 366.  Moreover, "[t]o plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose."  <u>Shearin v. E.F. Hutton Group, Inc.</u>, 885 F.2d 1162, 1166 (3d Cir. 1989).

The essence of a conspiracy is an agreement or concerted action between individuals.  <u>See</u> <u>D.R. by L.R.</u>, 972 F.2d at 1377; <u>Durre</u>, 869 F.2d at 545.  Consequently, a plaintiff must allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right.  <u>Id.</u>; <u>Rose</u>, 871 F.2d at 366; <u>Young</u>, 926 F.2d at 1405 n.16; <u>Chicarelli v. Plymouth Garden Apartments</u>, 551 F. Supp. 532, 539 (E.D. Pa. 1982).  Where a civil rights conspiracy is

13

alleged, there must be some specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity.  Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir. 1985). A plaintiff cannot rely on subjective suspicions and unsupported speculation.  Young v. Kann, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991).

There are no averments of fact in the Amended Complaint that reasonably suggest the presence of an agreement or concerted activity between the Defendants.  Begnoche has simply not alleged any facts showing any communication or cooperation among any Defendants from which an agreement could be inferred.  While Plaintiff has set forth some claims of constitutional misconduct, he has not adequately alleged that those actions were the result of a conspiracy.  Dismissal will be granted with respect to the claim of conspiracy.

**Religious Interference**

Plaintiff alleges that Defendants Nichols, Fields, and Adison violated his right to exercise his religious beliefs. Plaintiff raises contentions that the prison staff failed to provide him with a Native American spiritual advisor, opportunity to obtain items such as prayers feathers and denied him a special religious meal during the Green Corn feast celebration.  His Amended Complaint contends that the alleged religious interference violated his rights under the First Amendment as well as the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a)(RLUIPA).

14

Defendants seek dismissal of the religious infringement claims on the grounds that Begnoche's Amended Complaint concedes that the prison permitted to obtain his own religious materials and that a spiritual leader was permitted to visit him.  See Doc. 43, p. 17.  They also assert that Plaintiff acknowledges that he was afforded opportunity to observe the Green Corn feast.  Based upon those considerations Defendants conclude that a viable First Amendment claim has not been presented.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; ..."  U.S. Const. Amend. I.  It is undisputed that prisoners do not entirely forfeit all constitutional guarantees by reason of their conviction and confinement.  Bell v. Wolfish, 441 U.S. 520, 545 (1979).  Prisoners, as is well recognized, must be afforded "reasonable opportunities" to exercise their religious freedom guaranteed by the First Amendment.  Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972).

However, imprisonment necessarily results in restrictions on some constitutional rights, including the First Amendment's right to the free exercise of religion.  Thornburgh v. Abbott, 490 U.S. 401, 407 (1989).  An inmate plaintiff must establish that he had a sincerely held belief which was religious in nature before the First Amendment free exercise protections are deemed applicable.  Wisconsin v. Yoder, 406 U.S. 205, 215-19 (1972); Africa v. Pennsylvania, 662 F.2d 1025, 1029-30 (3d Cir. 1981).

Similarly, in order to establish a viable RLUIPA claim, a prisoner must likewise establish that he had a sincerely held

15

religious belief and that a prison policy or official practice substantially burdened his exercise of those religious beliefs.  A substantial burden is one where: (1) a prisoner is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning a precept of his religion in order to receive a benefit; or (2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs. Gould v. Beard, 2010 WL 845566 *4-5 (W.D. Pa. 2010).  Once a viable claim is asserted, the Government has the burden of demonstrating the burden furthers a compelling governmental interest and is the least restrictive means of doing so.  See Washington v. Klem, 497 F.3d 272, 277-78 (3d Cir. 2007); Gould v. Beard, 2010 WL 845566 *4-5 (W.D. Pa. 2010).[7]

It is initially noted there is no basis upon which to conclude that Plaintiff's Native American spiritual beliefs were not sincerely held as required under both the First Amendment and RLUIPA. Furthermore, there is no assertion that consultation with a Native American spiritual advisor, the use of items such as prayer feathers, and the observance of the Green Corn Feast were not

_____

7.  However, RLUIPA does not permit an action against Defendants in their individual capacities." Sharp v. Johnson, 669 F.3d 144, 153 (3d Cir. 2012).  Moreover, sovereign immunity has not been waived with respect to private claims for monetary damage under RLUIPA against state officials in their official capacities.  See id.; Sossamon v. Texas, ___ U.S. ___, 131 S.Ct. 1651, 1660 (2011). Moreover, since Plaintiff is no loner held at the Dauphin County Prison, any request for injunctive relief is moot.

included within the exercise of Plaintiff's aforementioned religious beliefs.

With respect to the remaining portion of Defendants' argument, while Plaintiff admits that he was ultimately provided with access to a spiritual advisor, he nonetheless claims that there was an initial four (4) month period where he was without any access to a spiritual advisor as well as two subsequent dates upon which the advisor was denied entry into the prison. This Court has not yet been provided with sufficient factual information by the parties to undertake a determination as to whether Plaintiff has established that those alleged deprivations placed a substantial burden upon the exercise of Begnoche's religious beliefs. Accordingly, that claim will be allowed to proceed at this juncture.

The Court of Appeals for the Third Circuit in Williams v. Morton, 343 F.3d 212 (3d. Cir. 2003) addressed a claim by Muslim prisoners that the denial of Halal meat meals violated their constitutional rights. After employing the Turner v. Safley, 482 U.S. 78 (1987) four part test, the Court of Appeals concluded that providing a vegetarian meal rather than one with Halal meat furthered legitimate penological interests of simplified food service, institutional security, and budgetary constraints. The Court additionally noted that in light of the substantial deference afforded prison administrators, providing prisoners with a pork free vegetarian diet provided a reasonable alternative means of expressing their religious beliefs.

17

In the present case, since this matter is before the court on a motion to dismiss and the Remaining Defendants have not yet provided their version of the relevant facts, a proper <u>Turner</u> analysis regarding what restrictions and opportunities were provided to Inmate Begnoche by Nichols, Adison, and Fields with respect to the observance of the Green Corn feast (especially the serving of a special food tray to Begnoche) and the possession of prayer feathers is also not presently feasible.

Based upon those considerations, the motion to dismiss will be denied with respect to the above described claims that those three (3) Defendants violated Plaintiff's right to exercise his religious beliefs.

**John/Jane Does**

The Amended Complaint also names four (4) John/Jane Doe Defendants.

John/Jane Doe defendants may only be allowed "to stand in for the alleged real parties until discovery permits the intended defendants to be installed." <u>Johnson v. City of Erie</u>, 834 F. Supp. 873, 878 (W.D. Pa. 1993) (citations omitted). Absent compelling reasons, a district court may dismiss such defendants if a plaintiff, after being granted a reasonable period of discovery, fails to identify them. <u>Scheetz v. Morning Call, Inc.</u>, 130 F.R.D. 34, 37 (E.D. Pa. 1990) ("Fictitious parties must eventually be dismissed, if discovery yields no identities.").

Based on this court's review of the record, although this action was initiated in June 2012 and the Amended Complaint was filed approximately one (1) year ago, Plaintiff has not yet

18

provided this court with the identities of the John/Jane Doe

defendants.  Accordingly, they shall be dismissed from this action

under the authority of <u>Scheetz</u>.[8]  An appropriate Order will enter.




                              S/Richard P. Conaboy
                              RICHARD P. CONABOY
                              United States District Judge


DATED: FEBRUARY 28, 2014

————————————

8.  If Plaintiff can identify the John/Jane Doe Defendants he may
file a motion for reconsideration within fourteen (14) days of the
date of this Memorandum.  Any reconsideration motion should clearly
identify the John/Jane Doe Defendant and provide the factual basis
for the claim against that individual.