IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

PAUL J. BEGNOCHE, SR., :
:
    Plaintiff :
:
v. : CIVIL NO. 3:CV-12-1057
:
WARDEN DEROSE, ET AL., : (Judge Conaboy)
:
    Defendants :

## MEMORANDUM
### Background

This pro se civil rights action pursuant to 42 U.S.C. § 1983 was filed by Paul J. Begnoche, Sr., an inmate presently confined at the State Correctional Institution, Mercer, Pennsylvania. By Order dated February 28, 2013, Plaintiff's request to file an amended complaint was granted. On December 12, 2013, this Court issued an Order which construed Plaintiff's filings (Docs. 38 & 39) as being his Amended Complaint. See Doc. 68.

By Memorandum and Order dated February 27, 2014, Defendants' motion to dismiss the Amended Complaint was granted in part. See Docs. 74 & 75. Specifically, Plaintiff's action was dismissed with exception of the allegations that Remaining Defendants Nichols, Addison, and Fields violated Plaintiff's right to exercise his religious beliefs as provided under the First Amendment.

By Order dated December 19, 2014, Plaintiff's motion (Doc. 85) seeking reconsideration of the February 27, 2014 Memorandum and Order was partially granted. See Doc. 140. The claims that

1

Defendant Counselor Tim Czaja and Defendant Venneri interfered with the Plaintiff's exercise of his religious beliefs were also allowed to proceed.

As a result of those decisions, Remaining Defendants are the following Dauphin County Prison officials: Deputy Warden Elizabeth Nichols; Chaplain Fields; Coordinator John Addison[1]; Venneri; and Counselor Tim Czaja.

Plaintiff seeks relief with respect to events which purportedly transpired during his prior confinement at the Dauphin County Prison, Harrisburg, Pennsylvania. Begnoche describes himself as being a Native American and a follower of the Native American Spiritual Red Path. According to the Amended Complaint, prison officials prevented Plaintiff from exercising his Native American religious beliefs, including celebrating the Green Corn Feast. Begnoche alleges that Coordinator Addison, Chaplain Fields, and Deputy Warden Nichols were responsible for his failure to receive a special food tray during the Green Corn Feast.

It is also asserted that were was no available Native American spiritual advisor or spiritual needs (such as prayer feathers).[2] Finally, Counselor Czaja along with Defendant Venneri allegedly badgered the Plaintiff during group counseling sessions and engaged in conduct which interfered with the prisoner's

---

1. Addison is described as being responsible for reviewing and responding to all prisoner grievances and requests and supervising the prison counselors.

2. The Amended Complaint does clarify that after a period of four (4) months, the prison did provide a contracted volunteer Native American spiritual advisor.

exercise of his religious beliefs. The Amended Complaint seeks compensatory, general, and punitive damages.

Remaining Defendants Nichols, Fields and Addison have filed a motion seeking entry of summary judgment.[3] See Doc. 118. The opposed motion is ripe for consideration.

## Discussion

### Summary Judgment

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

---

3. Defendant Czaja has filed a separate summary judgment motion. See Doc. 158.

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Religious Interference**

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; ..." U.S. Const. Amend. I. It is well settled that imprisonment necessarily results in restrictions on the First Amendment's right to the free exercise of religion. Thornburgh v. Abbott, 490 U.S. 401, 407 (1989). However, inmates must be afforded "reasonable opportunities" to exercise their religious freedom guaranteed by the First Amendment. Cruz v. Beto, 405 U.S. 319, 322

n.2 (1972). To set forth a viable constitutional claim a prisoner must establish that he had a sincerely held belief which was religious in nature before the First Amendment free exercise protections are deemed applicable. Africa v. Pennsylvania, 662 F.2d 1025, 1029-30 (3d Cir. 1981).

A viable claim under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a)(RLUIPA) must establish that the inmate had a sincerely held religious belief and that a prison policy or official practice substantially burdened his exercise of those religious beliefs. A substantial burden is one where: (1) a prisoner is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning a precept of his religion in order to receive a benefit; or (2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs. Gould v. Beard, 2010 WL 845566 *4-5 (W.D. Pa. 2010). Once a viable claim is asserted, the Government has the burden of demonstrating the burden furthers a compelling governmental interest and is the least restrictive means of doing so. See Washington v. Klem, 497 F.3d 272, 277-78 (3d Cir. 2007); Gould v. Beard, 2010 WL 845566 *4-5 (W.D. Pa. 2010).[4]

---

4. However, RLUIPA does not permit an action against Defendants in their individual capacities." Sharp v. Johnson, 669 F.3d 144, 153 (3d Cir. 2012). Moreover, sovereign immunity has not been waived with respect to private claims for monetary damage under RLUIPA against state officials in their official capacities. See id.; Sossamon v. Texas, ___ U.S. ___, 131 S.Ct. 1651, 1660 (2011). Moreover, since Plaintiff is no longer held at the Dauphin County Prison, any request for injunctive relief is moot.

5

As noted above, an inmate plaintiff must establish that he had a sincerely held belief which was religious in nature and that a prison policy or official practice substantially burdened his exercise of those religious beliefs in order to succeed on a First Amendment claim. Wisconsin v. Yoder, 406 U.S. 205, 215-19 (1972); Africa, 662 F.2d at 1029-30. There is no argument raised nor is there any basis for a determination that Plaintiff's Native American spiritual beliefs were not sincerely held as required under both the First Amendment and RLUIPA. Furthermore, there is no assertion that consultation with a Native American spiritual advisor, celebration of the Green Corn Feast or the use of prayer feathers was not included within the exercise of Plaintiff's aforementioned religious beliefs.

If the alleged religious interference stems from a prison policy the United States Supreme Court has held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987); see also O'Lone v. Shabazz, 482 U.S. 342 (1987) (reiterating recognition of the Turner standards as being the applicable test for determining the constitutionality of prison regulations).

In Turner, the Supreme Court set forth four factors to consider in reaching a decision: (1) is there a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it" (citation omitted), 482 U.S. at 89; (2) does the prisoner have alternate

means of "exercising the right that remain open to prison inmates," Id. at 90; (3) what "impact" would "accommodation of the asserted constitutional right have on guards and other inmates, and on the allocation of prison resources generally," Id.; and (4) what "ready alternatives" to the prison regulation exist. Id.

**Spiritual Advisor**

Plaintiff initially alleges that Defendants Nichols, Fields, and Addison violated his right to exercise his religious beliefs by failing to provide him with a Native American spiritual advisor. Begnoche claims that this purported religious interference violated his rights under the First Amendment as well as RLUIPA.

As previously noted there is no basis for an award of monetary damages against Nichols, Fields, and Addison under RLUPIA and any request for injunctive relief is moot since Begnoche is no longer confined in the Dauphin County Prison. As such the RLUPIA portion of the surviving claims is subject to dismissal.

While Plaintiff admits that he was ultimately provided with access to a spiritual advisor, he nonetheless contends that there was an initial four (4) month period where he was without any access to a spiritual advisor as well as two subsequent dates upon which his advisor was denied entry into the prison.

The Moving Defendants claim entitlement to entry of summary judgment on the grounds that "Plaintiff was provided with a Native American Spiritual Advisor as soon as the Prison staff was able to locate a volunteer to fill the position." Doc, 119, p. 8. They assert that immediately following Plaintiff's arrival at the prison he met with Chaplain Lutz on July 29, 2010. However, the inmate was

7

unable to provide Lutz with the name of a Spiritual Advisor to contact on his behalf. It is undisputed that pursuant to established prison policy resulting from budgetary concerns only volunteer spiritual advisors conduct worship services within the prison.

According to the Moving Defendants, Plaintiff asked Chaplains Lutz and Fields to locate a Native American Spiritual Advisor for him on August 4, 2010. In response to that request, Lutz initiated a search which proved to be difficult as there was no recognized Native American church in Pennsylvania. On September 22, 2010, Lutz received a list of potential Native American Spiritual Advisors from a chaplain at the nearby State Correctional Institution, Camp Hill, Pennsylvania (SCI-Camp Hill).

On October 13, 2010, Cheryl Germer, one of the individuals recommended by the SCI-Camp Hill chaplain agreed to be Plaintiff's volunteer spiritual advisor. After Germer was granted security clearance by Dauphin County prison officials, she met with Plaintiff on December 1, 2010. Thereafter, the visits continued on a regular weekly basis. However, in October 2011 the visits were reduced to every other week due to Chaplain Germer's work obligations.

Germer cancelled a worship service with Plaintiff on January 26, 2011 due to illness. A second service was cancelled at Germer's request on November 14, 2011. On December 7, 2011, Plaintiff was denied attendance at a scheduled worship service with Germer because his cell block was on security lock down. There were no other noted worship services stoppages.

8

In support of their argument, Moving Defendants have submitted a declaration under penalty of perjury by Chaplain Germer, a non-defendant. Germer acknowledges that she was an approved Native American spiritual advisor at the Dauphin County Prison and states that "Chaplain Lutz and other members of the Dauphin County Prison staff accommodated Plaintiff's spiritual needs." Doc. 120-6, ¶ 28. Germer adds the religious services and resources Begnoche was provided with while at the prison did not impact or restrict his ability to worship and practice his Native American spirituality. See id. at ¶ 27.

Germer adds that she conducted weekly or bi-weekly worship services at the prison and frequently met with Begnoche. The Chaplain adds that were two times when she was unable to conduct services because of illness and work obligations. However, Begnoche "could pray at any time and it was not necessary for him to pray at a scheduled worship service in order for him to carry out his native American spiritual beliefs." Id. at ¶ 24.

A declaration under penalty of perjury by Chaplain Lutz has also been provided by the Moving defendants. Lutz, also a non-defendant, avers that when Plaintiff first entered the prison he did not give Lutz "the name of a spiritual advisor to contact and he did not give me permission to contact anyone regarding his spiritual needs." Doc. 120-2, ¶ 6. Lutz adds that when Plaintiff did seek information regarding a Native American spiritual advisor on August 4, 2010, Lutz initiated a search to see if a qualified individual could be located and also provided Begnoche with booklets regarding Native American spiritual beliefs. On October

9

13, 2010, Chaplain Germer volunteered his services and upon obtaining security clearance began conducting services at the prison and meeting regularly with the Plaintiff and continued to do so until Begnoche left the prison in December 2010.

When Plaintiff was briefly recommitted to the Dauphin County Prison in March 2012, Lutz notes that Germer had long since resigned as the prison's Native American Spiritual Advisor because of a change in work location and Lutz was unable to locate a volunteer. Despite that failure, Plaintiff was permitted to privately and independently practice his beliefs. Plaintiff left the prison shortly thereafter on April 10, 2012.

Clearly, prison officials can not anticipate the religious affiliations of all prisoners entering the facility. Thus, the failure of dauphin County prison officials to have a Native American Spiritual Advisor in place at the time Begnoche entered the prison does not rise to the level of a constitutional violation. Second, the undisputed factual record shows that once Plaintiff expressed a desire to practice his spiritual beliefs, prison staff undertook timely measures to allow the inmate opportunity to do so.

Although there was admittedly an initial delay in securing the involvement of a Native American Spiritual Advisor,[5] the Plaintiff was provided with a reasonable alternative means of expressing his religious beliefs in the interim. Thereafter, when

---

5. In this vein, it is noted that the Plaintiff himself provided no assistance in locating or securing the participation of a Spiritual Advisor.

10

a volunteer Native American Spiritual Advisor was retained, regular services were held within the prison and Plaintiff was provided with the ability to frequently meet with Chaplain Germer.

Based upon the undisputed facts, the conduct attributed to Remaining Defendants Nichols, Addison, and Fields did not violate Plaintiff's right to exercise his religious beliefs. On the contrary, those officials undertook a reasonable, timely, and ultimately successful endeavor to obtain the regular services of a Native American Spiritual Advisor for Begnoche. Moreover, when the services of Chaplain Germer were no longer available, for reasons unrelated to any action by prison officials, Plaintiff was still afforded a reasonable opportunity to practice his beliefs.

Finally, the policy of the Dauphin County Prison to rely on volunteer religious advisors for the inmate population was not in violation of Turner as the conservation of limited financial resources was an acceptable legitimate penologoical objective.[6] Moreover, the effort put forth by prison staff to locate and retain volunteer a religious advisor for Begnoche constituted a reasonable alternative accommodation as considered under Turner.[7]

**Green Corn Feast**

The Green Corn Feast is an annual ceremony practiced by Native Americans which typically occurs in the late summer and is

---

6. The first Turner standard requires that the regulation at issue must have a valid rational connection to a legitimate government interest.

7. It is also noted that any dissatisfaction that Begnoche may have had with Chaplain Germer is not a proper basis for relief as an inmate does not enjoy a constitutional entitlement to a spiritual advisor of his own choosing.

related to the ripening of the corn crops. The celebration involves fasting and a "special feast." Doc. 1, p. 6. Plaintiff contends that he was denied his special feast tray.

Moving Defendants maintain that the undisputed record shows that Begnoche was permitted to observe the annual Native American Green Corn Feast twice during the duration of his Dauphin County Prison confinement. See Doc. 119, p. 12. Specifically, after Chaplain Lutz made the necessary arrangements the Green Corn Feast was scheduled for the prison October 15, 2010. The observance consisted of a special meal tray and a one hour period of private worship for the participating inmates.[8]

According to the Moving Defendants, the Plaintiff despite being instructed not to do so took and ate a normal lunch tray on the day of the celebration. As a result, he was denied permission to have a special Green Corn Feast meal tray. However, less than two weeks later, Plaintiff was provided with a substitute individual Green Corn Feast and was given a special meal tray and provided with one hour of private worship. The following year Plaintiff celebrated the Green Corn Feast without incident.

Chaplain Lutz's declaration states that in September 2010 he obtained information as to what accommodations must be made to permit prisoners to celebrate their Native American Green Corn Feast. Doc. 120-2, ¶ 10. A Green Corn Feast was originally

---

8. To the extent that Plaintiff seeks relief based upon the fact that his celebration of the Green Corn Feast was private, he has not provided this Court with any facts which support a claim that his beliefs required a group celebration.

12

scheduled for October 15, 2010 in the prison chapel but was postponed because Begnoche failed to follow proper procedure.

There was a celebration of the Green Corn Feast conducted in the Dauphin County Prison chapel on October 26, 2010. Specifically, Plaintiff was provided with a special meal and permitted an hour in which to pray and worship under Lutz's supervision. The following year the annual Green Corn Feast was held on August 31, 2011 and Begnoche participated. The Plaintiff left the prison approximately two months later.

Once again based upon the undisputed record, Plaintiff was afforded a reasonable opportunity to celebrate the Green Corn Feast during the period of his incarceration at the Dauphin County Prison. Although there are facts in dispute regarding the cause of the initial postponement of the 2010 Green Corn Feast, it is undisputed that the event was conducted for Begnoche shortly thereafter. Once again viewing the undisputed facts in a light most favorable to Plaintiff, there is simply no basis for a determination that any short term delay[9] in holding the Green Corn Feast observance by prison officials interfered with Begnoche's ability to exercise his religious beliefs.[10]

**Religious Items**

Plaintiff also contends that he was deprived items which he required to practice his religious beliefs. It is initially noted

---

9. There are no facts which suggest that the Green Corn feast must be conducted on a specific date.

10. Since it is undisputed that the Dauphin County Prison schedules an annual observation of the green Corn Feast for Native American inmates there was no violation of <u>Turner</u>.

13

that Plaintiff does not maintain that he was deprived of religious items due to any established prison policy. As such, a <u>Turner</u> violation has not been sufficiently pled.

Second, Chaplain Lutz's aforementioned declaration provides that Plaintiff was given several booklets relating to the practice of his Native American beliefs. <u>See</u> Doc. 120-2, ¶ 11. Chaplain Germer's sworn declaration states that she was permitted to bring hand outs, cassette tapes, five prayer feathers, a drum and beater stick into the prison to play during the Native American worship services. <u>See</u> Doc. 120-6. Germer adds that prison staff accommodated Plaintiff's spiritual needs and his ability to worship was not restricted.

Based upon the undisputed record, there is no evidence which could support a claim that Plaintiff was deprived of religious items which he required to practice his religious beliefs.

**Qualified Immunity**

Qualified immunity is an affirmative defense which must be pleaded by the defendant official. <u>Verney v. Pennsylvania Turnpike Comm'n</u>, 881 F. Supp. 145, 149 (M.D. Pa. 1995). In <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), the United States Supreme Court held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Id</u>. at 818; <u>Sherwood v. Mulvihill</u>, 113 F.3d 396, 398-99 (3d Cir. 1997); <u>Showers v. Spangler</u>, 957 F. Supp. 584, 589 (M.D. Pa. 1997). It has also been held that "qualified immunity is

14

coextensive for suits brought against state officials under 42 U.S.C. § 1983 (1982), and for suits brought directly under the Constitution against federal officials." People of Three Mile Island v. Nuclear Regulatory Commissioners, 747 F.2d 139, 144 n.9 (3d Cir. 1984) (citing Butz v. Economou, 438 U.S. 478, 504 (1978)).

The United States Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), subsequently established a two part test for analyzing qualified immunity claims. See also Curley v. Klem, 298 F.3d 271 (3d Cir. 2002); Bennett v. Murphy, 274 F.3d 133 (3d Cir. 2002). The initial inquiry in a qualified immunity examination is whether "the facts taken in the light most favorable to the plaintiff show a constitutional violation." Bennett, 274 F.3d at 136. The second prong requires a determination as to whether the constitutional right at issue was clearly established. If so, then a court must inquire as to "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201. A determination that the conduct violated a clearly established constitutional right precludes the granting of qualified immunity.

Clearly, Defendants Nichols, Addison, and Fields were aware that the Plaintiff had a clearly established constitutional right to practice his religious beliefs. Assuming that there was a violation of the Plaintiff's right to exercise his religious beliefs, the Moving Defendants are alternatively entitled to qualified immunity. With respect to the challenged actions taken by those officials it is apparent that it would not have been clear to a reasonable person that their conduct was unlawful. Rather, as

discussed above the undisputed record shows that the Moving Defendants made a reasonable attempt to assist the Plaintiff in the exercise of his religious beliefs. Accordingly, even if the relatively short term delay in obtaining the services of a spiritual advisor or the postponement of the initially scheduled Green Corn Feast were found to constitute improper interference with the exercise of Plaintiff's religious rights, the moving Defendants would be entitled to qualified immunity.

_____
RICHARD P. CONABOY
United States District Judge

DATED: SEPTEMBER 24, 2015