IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


PAUL J. BEGNOCHE, SR.,            :
                                 :
          Plaintiff              :
                                 :
     v.                          :    CIVIL NO. 3:CV-12-1057
                                 :
WARDEN DEROSE, ET AL.,           :    (Judge Conaboy)
                                 :
          Defendants             :

_____

**MEMORANDUM**
**Background**

          Paul J. Begnoche, Sr., an inmate presently confined at the
State Correctional Institution, Mercer, Pennsylvania filed this pro
se civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff
seeks relief with respect to events which purportedly transpired
during his prior confinement at the Dauphin County Prison,
Harrisburg, Pennsylvania. By Order dated December 12, 2013, this
Court issued an Order which construed Plaintiff's filings (Docs. 38
& 39) as being his Amended Complaint. Remaining Defendants are two
Dauphin County Prison Counselors Tim Czaja and Rebecca Venneri.[1]

          By way of background, Defendants' motion to dismiss the
Amended Complaint was granted in part by Memorandum and Order dated
February 27, 2014.  See Docs. 74 & 75.  Specifically, Plaintiff's
action was dismissed with exception of the allegations that
Defendants Nichols, Addison, and Fields violated Plaintiff's right

_____

1.  The Court will rely on Defendants' spellings of the parties'
names.

1

to exercise his religious beliefs as provided under the First Amendment.  By Order dated December 19, 2014, Plaintiff's motion seeking reconsideration of the February 27, 2014 Memorandum and Order was partially granted.  <u>See</u> Doc. 140.  Specifically, this Court determined that the claims that Defendant Counselors Tim Czaja and Rebecca Venneri interfered with the Plaintiff's exercise of his religious beliefs should also be allowed to proceed. Defendants Nichols, Addison, and Fields' motion seeking entry of summary judgment was granted on September 24, 2015.  <u>See</u> Doc. 181.

Begnoche describes himself as being a Native American and a follower of the Native American Spiritual Red Path.  According to the Amended Complaint, Czaja and Venneri were group counselors in a therapeutic community (TC) program offered at the prison.  They allegedly verbally badgered the Plaintiff during group counseling sessions and engaged in conduct which purportedly interfered with the prisoner's exercise of his religious beliefs.  <u>See</u> Doc. 38, p. 22, ¶ 23.  The Amended Complaint seeks compensatory, general, and punitive damages.

Remaining Defendant Czaja has filed a motion seeking entry of summary judgment.  <u>See</u> Doc. 158.  The opposed motion is ripe for consideration.

## <u>Discussion</u>

Defendant Czaja asserts that he is entitled to entry of summary judgment because the undisputed evidence shows that there was no verbal harassment of the Plaintiff and any verbal harassment is insufficient to establish a civil rights claim.  Second, the Moving Defendant argues the undisputed evidence shows that TC did

not involve religious content or interfere with Plaintiff's ability
to practice his religious beliefs.  The final argument contends
that Czaja is entitled to qualified immunity.

**Standard of Review**

Summary judgment is proper if "the pleadings, the discovery
and disclosure materials on file, and any affidavits show that
there is no genuine issue as to any material fact and that the
movant is entitled to a judgment as a matter of law."  Fed. R. Civ.
P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d
Cir. 2001).  A factual dispute is "material" if it might affect the
outcome of the suit under the applicable law.  Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is
"genuine" only if there is a sufficient evidentiary basis that
would allow a reasonable fact-finder to return a verdict for the
non-moving party.  Id. at 248.  The court must resolve all doubts
as to the existence of a genuine issue of material fact in favor of
the non-moving party.  Saldana, 260 F.3d at 232; see also Reeder v.
Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992).
Unsubstantiated arguments made in briefs are not considered
evidence of asserted facts.  Versarge v. Township of Clinton, 984
F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of
evidence to support the claims of the non-moving party, the non-
moving party may not simply sit back and rest on the allegations in
its complaint.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324
(1986).  Instead, it must "go beyond the pleadings and by [its] own
affidavits, or by the depositions, answers to interrogatories, and

3

admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23.  "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Czaja's Declaration**

In support of his arguments, the Moving Defendant has submitted a declaration under penalty of perjury.  See Doc. 160-1. Czaja acknowledges that during the relevant time period he was employed as a treatment counselor of the I Block TC at the Dauphin County Prison.  The I Block TC is described as a special unit where prisoners with a history of violence were housed and provided with a program designed to address issues such as substance abuse and anger management.  See Doc. 159, p. 8.  The TC program consisted of three levels and included written assignments and group sessions.

According to Czaja, participation in TC was voluntary and only inmates requiring violence intervention training were eligible for placement.  In order to advance from one TC level to another, inmates were required to complete a hot seat group discussion wherein they receive constructive feedback from their peers

4

regarding their performance. Czaja states that Plaintiff requested
to enter TC and was not forced or compelled to do so.  See id. At ¶
16. Furthermore, there was no religious programming or content in
the TC and Begnoche's failure to complete required tasks, lack of
effort, insubordination,  and refusal to receive constructive
feedback lead to his reclassification out of the program.

**Verbal Harassment**

Plaintiff contends that he was subjected to verbal
harassment during his hot seat sessions.  Czaja's declaration
provides that although Plaintiff was subjected to verbal
constructive feedback from his peers, the inmate was not verbally
harassed or hazed during his hot seat sessions.  See id. at ¶ 35.

Defendant Czaja asserts that entry of summary judgment is
appropriate with respect to this claim because undisputed evidence
shows that prisoners were prohibited from harassing, badgering or
hazing one another during the hot set sessions.  Moreover, Czaja
has no recollection of the Plaintiff being subjected to any such
verbal harassment.  Furthermore, the Moving Defendant argues that a
claim of verbal harassment does not give rise to a viable civil
rights claim.  See Doc. 159, p. 14.

The use of words generally cannot constitute an assault
actionable under § 1983.  Johnson v. Glick, 481 F.2d 1028, 1033 n.7
(2d Cir.); Maclean v. Secor, 876 F. Supp. 695, 698-99 (E.D. Pa.
1995); Murray v. Woodburn, 809 F. Supp. 383, 384 (E.D. Pa. 1993)
("Mean harassment . . . is insufficient to state a constitutional
deprivation."); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp.

185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983.").

Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations. Balliet v. Whitmire, 626 F. Supp. 219, 228-29 (M.D. Pa.) ("[v]erbal abuse is not a civil rights violation . . ."), aff'd, 800 F.2d 1130 (3d Cir. 1986) (Mem.). A constitutional claim based only on verbal threats will fail regardless of whether it is asserted under the Eighth Amendment's cruel and unusual punishment clause, see Prisoners' Legal Ass'n, 822 F. Supp. at 189, or under the Fifth Amendment's substantive due process clause.

Verbal harassment, with some reinforcing act accompanying them, however, may state a constitutional claim. For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words. See Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) (guard put a revolver to the inmate's head and threatened to shoot); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988) (involving a prison employee who threatened an inmate with a knife). Moreover, alleged instances of verbal harassment which are not accompanied by any physical contact are constitutionally insufficient. See Hart v. Whalen, 2008 WL 4107651 *10 (M.D. Pa. July 29, 2008); Wright v. O'Hara, 2004 WL 1793018 *7 (E.D. Pa. 2004)(correctional officer's words and gestures, including lunging at prisoner with a clenched fist were constitutionally insufficient because there was no physical contact).

6

There is no indication that any of the verbal harassment allegedly voiced against Begnoche was accompanied by a reinforcing act involving a deadly weapon as contemplated under Northington and Douglas.  More importantly, it is not alleged that the alleged verbal abuse was accompanied by any physically intrusive behavior. Given the circumstances described by Plaintiff, the purported verbal harassment attributed to Counselor Czaja, although perhaps offensive, was not of such magnitude to shock the conscience as contemplated by this Court in S.M. v. Lakeland School District, 148 F. Supp.2d 542, 547-48 (M.D. Pa.  2001) and thus, did not rise to the level of a constitutional violation.  Finally, Czaja cannot be held responsible for any verbal harassment by other prisoners. See  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)(each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim).  This request for entry of summary judgment will be granted.

**Establishment Clause/Free Exercise**

In his sworn declaration Czaja states that to the best of his knowledge "Plaintiff was never forced to accept any specific religious faith" while in the TC.  Doc. 160-1, ¶ 53.  The Moving defendant adds that he did not promote Plaintiff to practice Christianity during the course of this TC enrollment.

Czaja asserts that he is entitled to entry of summary judgment because the TC program did not involve religious content or force Plaintiff to practice Christianity or interfere with Begnoche's ability to practice his Native American beliefs.  See

Doc. 159, p. 15.  In support of his argument, Plaintiff has submitted his sworn declaration as well as a copy (Doc. 160-2) of the written description the TC program including its rules and regulations.  Also submitted are copies of the Plaintiff's TC progress notes.

It is well settled that the "government must avoid excessive interference with, or promotion of religion." VanOrden v. Perry, 125 S. Ct 2854, 2868 (2005)(Breyer, concurring).  As previously discussed by this Court's earlier rulings in this matter, the First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; ..." U.S. Const. Amend. I.  An inmate must be afforded reasonable opportunity to exercise his religious beliefs under the First Amendment. Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972).  However, imprisonment necessarily results in restrictions on some constitutional rights, including the First Amendment's right to the free exercise of religion. Thornburgh v. Abbott, 490 U.S. 401, 407 (1989).

The Third Circuit Court of Appeals  in Bobko v. Lavan, 157 Fed Appx. 516 (3d Cir. 2005), addressed a claim by a prisoner who refused to participate in a similar therapeutic community program. The Court of Appeals recognized that state officials violate the First Amendment's Establishment Clause when it requires a prisoner to participate in a drug or alcohol rehabilitation with a religious component. However, since the Defendants in Bobko "submitted evidence establishing that SOS, a secular approach to recovery," was available in the challenged program, the Court of Appeals

determined that there was no Establishment Clause violation.  Id. at 518.

In the present case, undisputed evidence submitted by the Moving Defendant shows that the Dauphin County's  TC program was both voluntary and secular.  Although TC did include a voluntary spiritual group aspect which was led by inmates, it did not constitute a government endorsement of a specific religious belief. Accordingly, this Court agrees with the Moving Defendant's argument that a valid claim under the Establishment Clause has not been stated.

With respect to Begnoche's claim that Czaja interfered with his right to free exercise of his religious beliefs, it is clear that inmates "do not forfeit all constitutional protections by reason of their conviction and confinement in prison." DeHart v. Horn, 227 F.3d 47, 50 (3d Cir. 2000) (quoting Bell v. Wolfish, 441 U.S. 441 U.S. 520, 545 (1979)).  Prisoners  must be afforded "reasonable opportunities" to exercise their religious freedom guaranteed by the First Amendment. Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972).

However, imprisonment necessarily results in restrictions on some constitutional rights, including the First Amendment's right to the free exercise of religion. Thornburgh v. Abbott, 490 U.S. 401, 407 (1989).  An inmate plaintiff must establish that he had a sincerely held belief which was religious in nature and that a prison policy or official practice substantially burdened his exercise of those religious beliefs in order to succeed on a  First

Amendment claim.  <u>Wisconsin v. Yoder</u>, 406 U.S. 205, 215-19 (1972); <u>Africa v. Pennsylvania</u>, 662 F.2d 1025, 1029-30 (3d Cir. 1981).

With respect to their first requirement, there is no argument by Defendant Czaja that Plaintiff has not satisfied his burden of establishing that he had a sincerely held belief which was religious in nature.

Substantial burden is satisfied when: (1) a prisoner is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning a precept of his religion in order to receive a benefit; or (2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.  <u>Gould v. Beard</u>, 2010 WL 845566 * 4-5 (W.D. Pa. 2010). Once a viable claim is asserted, the Government has the burden of demonstrating the burden furthers a compelling governmental interest and is the least restrictive means of doing so.  <u>See Washington v. Klem</u>, 497 F.3d 272, 277-78 (3d Cir. 2007).

Plaintiff's pending action does not challenge the constitutionality of a prison regulation.  Begnoche is also not asserting that he was punished for his religious beliefs or for trying to exercise those beliefs. Furthermore, Plaintiff was not required to participate or subscribe to any particular religious or spiritual activities or beliefs.  Rather, the inmate was simply given the option of participating in TC.[2]

---

2.      Prisoners of all faiths are welcome to participate in the TC program offered at the prison.

He has also not presented facts which could support a claim that either of the two Remaining Defendants engaged in any conduct which substantially burdened his exercise of any religious beliefs. Based upon consideration of the undisputed facts as established by Czaja's declaration, and the copies of the TC program description, rules and regulation as well as Begnoche's progress notes from his TC tenure warrant a determination that the TC program and Vczaja's conduct did not violate the Establishment Clause and or substantially his exercise of his religious beliefs.  The request for summary judgment will be granted.

**Qualified Immunity**

Qualified immunity is an affirmative defense which must be pleaded by the defendant official.  Verney v. Pennsylvania Turnpike Comm'n, 881 F. Supp. 145, 149 (M.D. Pa. 1995).  In Harlow v. Fitzgerald, 457 U.S. 800 (1982), the United States Supreme Court held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Id. at 818; Sherwood v. Mulvihill, 113 F.3d 396, 398-99 (3d Cir. 1997); Showers v. Spangler, 957 F. Supp. 584, 589 (M.D. Pa. 1997).  It has also been held that "qualified immunity is coextensive for suits brought against state officials under 42 U.S.C. § 1983 (1982), and for suits brought directly under the Constitution against federal officials."  People of Three Mile

11

Island v. Nuclear Regulatory Commissioners, 747 F.2d 139, 144 n.9 (3d Cir. 1984) (citing Butz v. Economou, 438 U.S. 478, 504 (1978)).

The United States Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), subsequently established a two part test for analyzing qualified immunity claims. See also Curley v. Klem, 298 F.3d 271 (3d Cir. 2002); Bennett v. Murphy, 274 F.3d 133 (3d Cir. 2002). The initial inquiry in a qualified immunity examination is whether "the facts taken in the light most favorable to the plaintiff show a constitutional violation." Bennett, 274 F.3d at 136. The second prong requires a determination as to whether the constitutional right at issue was clearly established. If so, then a court must inquire as to "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201. A determination that the conduct violated a clearly established constitutional right precludes the granting of qualified immunity.

Defendant Czaja was clearly aware that the Plaintiff had a clearly established constitutional right to practice his religious beliefs. Assuming that there was a violation of the Plaintiff's right to exercise his religious beliefs, Czaja alternatively argues that he is entitled to qualified immunity since it would not have been clear to a reasonable person that the challenged conduct was unlawful.

Rather, as discussed above the undisputed record shows that the Moving Defendant acted in a reasonable manner when undertaking his duties counseling the TC program and did not prevent Plaintiff

12

from exercising his individual religious beliefs.  Accordingly, even if Czaja's alleged actions were found to constitute improper interference with the exercise of Plaintiff's religious rights, the moving Defendant would be entitled to qualified immunity.

**Counselor Venneri**

A review of the Amended Complaint shows that the claims asserted against Remaining Defendant Counselor Venneri either mirror the allegations asserted against Czaja or the failure to respond to administrative grievance allegations which this Court's February 28, 2014 Memorandum and Order dismissed as meritless.  See Doc. 74, p. 8.

Since this Court's determinations have concluded that a viable civil rights claims has not been asserted against the Remaining Defendant Venneri, sua sponte dismissal will be entered in her favor.  See 28 U.S.C. § 1915 (e)(2)(B)(ii).  An appropriate Order will enter.

S/Richard P. Conaboy_____
 RICHARD P. CONABOY
 United States District Judge

DATED: September 2 , 2016

13